UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK D. SANDERS,

Plaintiff,

v.

J. GUTIERREZ,

Defendant.

Case No. 1:25-cv-01802-KES-CDB (PC)

FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR PLAINTIFF'S FAILURE (1) TO STATE A CLAIM AND (2) TO PROSECUTE AND TO OBEY COURT ORDERS AND LOCAL RULES

(Doc. 14)

**14-DAY OBJECTION PERIOD**

Plaintiff Mark D. Sanders ("Plaintiff") is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983.

## I. RELEVANT BACKGROUND

On June 16, 2026, the Court issued its first screening order requiring a response from Plaintiff. (Doc. 6 at 14). The Court found that Plaintiff failed to state any cognizable claim and granted Plaintiff leave to amend his complaint to cure the identified deficiencies. *Id.* at 14-15. Following two extensions granted by the Court (Docs. 10, 12), on August 10, 2026, Plaintiff filed his operative first amended complaint ("FAC"). (Doc. 13).

On October 14, 2026, the Court issued its second screening order requiring a response from Plaintiff. (Doc. 14). The Court found that Plaintiff again failed to state any cognizable claim and that his procedural due process claim under the Fourteenth Amendment is *Heck*-barred such that

he is foreclosed from bringing that claim under § 1983 in a further amended complaint. *Id.* at 12-13. Because the Court found that Plaintiff may be able to cure the deficiencies of his equal protection claim, the Court granted Plaintiff further leave to amend his FAC. *Id.* at 13. With its screening order, the Court served on Plaintiff a civil rights complaint form and ordered him within 30 days from service of the order and form to file either a second amended complaint curing the deficiencies identified by the Court in the order or in the alternative, a notice of voluntary dismissal if Plaintiff no longer wishes to pursue this action. *Id.* Plaintiff was forewarned that the failure to comply with the order will result in the "**recommend[ation] that this action be dismissed, without prejudice, for failure to obey a court order and for failure to prosecute.**" *Id.* at 13-14 (emphasis original).

The time to comply with the order has passed and Plaintiff failed to file either a second amended complaint or a notice of voluntary dismissal. Accordingly, the undersigned issues the following findings and recommendations to dismiss this action for Plaintiff's failure to state a claim, and, separately, for failure to prosecute and to obey court orders and Local Rules as set forth below.

## II. PLAINTIFF'S OPERATIVE COMPLAINT FAILS TO STATE A CLAIM

### A. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner raises claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(iii); 28 U.S.C. § 1915A(b). The Court must dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) (citing *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006)).

### B. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). The statement must give the defendant fair notice of the plaintiff's claims and the grounds supporting the claims. *Id.* at 512.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Plausibility does not require probability, but it requires more than the "sheer possibility" of a defendant's liability. *Id.* (quoting *Twombly*, 550 U.S. at 556). A claim is plausible when the facts pleaded allow the court to make reasonable inferences that the defendant is liable for wrongful conduct. *Id.* However, a court "is not required to indulge unwarranted inferences." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). This liberal pleading standard applies to a plaintiff's factual allegations but not to his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Moreover, a liberal construction of the complaint may not supply essential elements of a claim not pleaded by the plaintiff. *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted). The mere possibility of misconduct and facts merely consistent with liability is insufficient to state a cognizable claim. *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Vague and conclusory allegations of official misconduct are insufficient to withstand a motion to dismiss. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

2. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was

personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation") (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

3. <u>Supervisory Liability</u>

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676–77; *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability may be based on inaction in the training and supervision of subordinates. *Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey*, 673 F.2d at 268.

///

///

///

///

**C. Discussion**

1. Plaintiff's FAC Allegations[1]

Plaintiff names Correctional Officer J. Gutierrez ("Defendant" or "CO Gutierrez") of California Correctional Institution ("CCI") as the sole Defendant in his FAC. (Doc. 13 at 2). Plaintiff raises claims under the Fourteenth Amendment to the U.S. Constitution against Defendant in his official capacity for violations of his rights to due process and equal protection. *Id.* at 3, 4. In his prayer for relief, Plaintiff seeks monetary, compensatory, and punitive damages in an amount to be determined at trial. *Id.* at 5.

Plaintiff alleges that on March 4, 2025, his cell was searched by CO Gutierrez of the Investigative Services Unit ("ISU"), and the search was planned to frame Plaintiff for possession of contraband. *Id.* at 6 ¶¶ 1-2. Plaintiff asserts that the search was targeted because of his race and mental health disability while he was housed in the Enhanced Outpatient Program ("EOP"). *Id.* ¶ 3. Plaintiff alleges that CO Gutierrez trashed his cell in a manner that would provoke him into a mental health crisis or cause a confrontation which would have him removed from the mental health program. *Id.* ¶ 4. CO Gutierrez also falsely claimed to have found marijuana on Plaintiff's person in an attempt to frame him for behavior which would have gotten Plaintiff removed from the program. *Id.* ¶ 5. Plaintiff confronted CO Gutierrez, challenging that he found anything on Plaintiff, and when CO Gutierrez realized that his personal body camera would prove the marijuana finding to be false, he began to scramble for an alternative story. *Id.* ¶ 6. Plaintiff alleges that CO Gutierrez realized he would be exposed for falsifying departmental disciplinary reports and changed his story to say a canine alerted to a storage container and that the marijuana was found there. *Id.* ¶ 7.

Plaintiff asserts that CO Gutierrez deceitfully targeted him for a felony prosecution referral using false and bogus accusations in which he swore under penalty of perjury in an effort to cover-up his own criminal actions. *Id.* at 7 ¶ 8. Plaintiff alleges CO Gutierrez maliciously and intentionally "staked" (presumably, "stacked") three CDCR Title 15 rule violation reports

[1]The Court accepts Plaintiff's allegations in the FAC as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

("RVRs") over this singular incident in a calculated effort to have Plaintiff removed from EOP "as these three [RVRs] would signify manipulation of the mental health program[.]" *Id.* ¶ 9. Plaintiff was "found guilty" at a disciplinary hearing on June 24, 2025, and asserts he was denied "basic due process rights during the hearing" including reviewing the evidence against him, calling witnesses, and presenting body camera footage. *Id.* ¶ 10. Plaintiff was punished by the loss for one year of family visits, one year mandatory drug testing, 90 days loss of visits, 150 days loss of good time credits, and other institutional restrictions. *Id.*

Plaintiff filed a CDCR 602 grievance (log number 835808) detailing the allegations raised in the FAC, stressing "numerous due process violations" including the failure to allow witnesses and review evidence, and implying the disciplinary hearing was a "kangaroo court." *Id.* ¶ 11. In June 2025, the chief departmental officer ordered the RVRs to be reissued and reheard, and "[t]he new RVRs contained the same or similar due process violations, including discrepancies of factual evidence, and the stacking of RVR's." *Id.* ¶ 12. On June 24, 2025, Plaintiff was again found guilty at a second disciplinary hearing. *Id.* at 8 ¶ 13. Plaintiff alleges this second hearing was riddled with similar due process violations, and he was punished by the loss of family visits for one year, one month of mandatory drug testing, 90 days loss of visits, 150 days loss of good time credits, and other institutional restrictions. *Id.*

Plaintiff filed another 602 grievance alleging the same facts described above and obtained a new disciplinary hearing "to which[] the institution has done nothing to fix the deficiencies in the RVR hearing." *Id.* ¶ 14. Plaintiff asserts he will prove that since filing the grievances, he has become a target of correctional staff in an effort to discredit him and stop him from filing grievances concerning the allegations raised herein. *Id.*

Plaintiff asserts a right to be free from discrimination based on his race and mental health condition, which violate the Americans with Disabilities Act ("ADA"). *Id.* ¶ 16. Plaintiff alleges that CO Gutierrez's actions caused or contributed to the breakup of Plaintiff's marriage and caused Plaintiff severe manic episodes. *Id.* ¶ 17. Plaintiff alleges that CO Gutierrez knows that the CCI mental health department is "under federal receiver oversight, and therefore, should not attempt to disrupt or supplant the departments psychiatrist, psychologist, or clinicians treatment." *Id.* ¶ 18.

Plaintiff claims a right not to be the target of disciplinary or criminal referrals to cover-up the discrimination against him by CO Gutierrez. *Id.* ¶ 19. Plaintiff further claims right to be free from "kangaroo disciplinary process" and to challenge the allegations against him using CDCR's grievance procedure, the courts, "without fear of reprisals and retaliation[.]" *Id.* ¶ 20.

2. Analysis

*a. Fourteenth Amendment Due Process*

i. Governing Authority

The Fourteenth Amendment protects persons from deprivations of life, liberty, or property without due process of law. U.S. Const. amend. XIV. To state a due process claim, the plaintiff must first "establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 480 (1983)).

Protected liberty interests may arise from the Constitution or from state law. *Wilkinson*, 545 U.S. at 221. "A state may create a liberty interest through statutes, prison regulations, and policies." *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (citation omitted). When a protected liberty interest is implicated, the Due Process Clause provides certain procedural guarantees. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). The amount of process or specific procedures required vary by context and the particular interest at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

"Under the Fourteenth Amendment's Due Process Clause, a prisoner is entitled to certain due process protections when he is charged with a disciplinary violation." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 1077-78. "The Due Process clause provides prisoners two separate sources of protection against unconstitutional state disciplinary actions. First, a prisoner may challenge a disciplinary action which deprives or restrains a state-created liberty interest in

some 'unexpected manner.'" *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Sandin*, 515 U.S. at 483-84). "Second, a prisoner may challenge a state action which does not restrain a protected liberty interest, but which nonetheless imposes some 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (citing *Sandin*, 515 U.S. at 484). "If the hardship is sufficiently significant, then the court must determine whether the procedures used to deprive that liberty satisfied Due Process." *Id.*

"There is no single standard for determining whether a prison hardship is atypical and significant, and the 'condition or combination of conditions or factors ... requires case by case, fact by fact consideration.'" *Id.* at 861. The Ninth Circuit provides three factors a court must consider when determining whether a prison hardship is atypical and significant: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority, (2) the duration of the condition, and the degree of restraint imposed, and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Id.* (citing *Sandin*, 515 U.S. at 486-87).

ii. Analysis

Plaintiff asserts a violation of his right to due process under the Fourteenth Amendment, alleging that Defendant issued three false RVRs against Plaintiff based on a fabricated narrative that a canine alerted him to marijuana found in one of Plaintiff's storage containers during a targeted search of Plaintiff's cell on March 4, 2025. Plaintiff alleges that the RVRs were issued in a calculated effort to have him removed from the EOP mental health program because of his race and mental health disability. He alleges that he was found guilty at his first disciplinary hearing on June 24, 2025, and that he filed a grievance (log number 835808) based on due process violations experienced at the hearing, including for denials of the ability to review the evidence against him, to call witnesses, and present body camera footage. That same day, Plaintiff was granted a second disciplinary hearing in response to the grievance form that was riddled with the same due process violations and was again found guilty. The RVRs resulted in the losses of 150 days of good-time credits, 90 days of visits, and one year of family visitation, as well as subjecting Plaintiff to one year of mandatory drug testing and other institutional restrictions. Plaintiff filed a

second grievance form alleging the same deficiencies from his previous disciplinary hearings and was granted a third disciplinary hearing, at which CDCR failed "to fix the deficiencies." Plaintiff does not allege facts regarding the result of that hearing. Plaintiff asserts that since he began filing the grievances, he has become the target of correctional staff who seek to discredit and stop him from filing grievances concerning the fabricated marijuana finding.

"Generally, the issuance of allegedly false RVRs can state a § 1983 claim in two situations: (1) where the incarcerated person is denied procedural due process during the ensuing prison disciplinary proceeding that resulted in a deprivation of a protected liberty interest; and (2) the false allegations are in retaliation for the prisoner engaging in protected activities." *Johnson v. Hill*, No. 2:23-cv-01846-DJC-SCR-P, 2025 WL 3005047, at *3 (E.D. Cal. Oct. 27, 2025) (citing *Butts v. Ibarra*, No. 1:20-cv-0273-EPG-PC, 2020 WL 4676375, at *4 (E.D. Cal. Aug. 12, 2020), *report and recommendation adopted*, 2020 WL 6020409 (E.D. Cal. Oct. 9, 2020)).

Here, Plaintiff shows that although he received a new disciplinary hearing each time he filed a grievance, he was denied procedural due process during the two RVR disciplinary hearings he received on June 24, 2025, based on denials of the ability to review the evidence against him, to call witnesses, and to present body cam footage, presumably of CO Gutierrez's falsified representation that a canine alerted him to marijuana found in one of Plaintiff's storage containers during a cell search. *Serrano*, 345 F.3d at 1077-78; *see Wolff*, 418 U.S. at 563-71 (noting minimum procedural requirements in prison disciplinary proceedings include written notice of charges against a prisoner, a written statement by the fact-finder of the evidence and reasons for taking disciplinary action, and the prisoner's right to call witnesses). Additionally, Plaintiff's allegations that the RVRs resulted in the loss of good time credits and family visitation demonstrate that Plaintiff was deprived of a protected liberty interest. *See Johnson v. Bishop*, No. 2:09–cv–2103 JAM JFM (PC), 2011 WL 1668978, at *4 (E.D. Cal. May 3, 2011) ("Assuming plaintiff has a liberty interest to be free from loss of good time credits, he is entitled to due process protections under the Fourteenth Amendment[.]"), *report and recommendation adopted by* 2011 WL 2621176 (E.D. Cal. June 30, 2011). Plaintiff's allegations, liberally construed, appear to state a procedural due process claim under the Fourteenth Amendment. *Cf. Johnson v. Fernald*, No. 2:25-cv-09297-

MRA-ACCV, 2026 WL 1243268, at *1, *5 (C.D. Cal. May 1, 2026) (finding Fourteenth Amendment due process claim sufficient at screening based on allegations that defendant issued false RVRs after plaintiff filed a complaint and plaintiff thereafter was denied due process "when he was not allowed to participate or be present for hearings related to the RVRs, [and] was denied the entry of and production of evidence related to the RVRs" and resulted in denial of parole, recreation time, and access to the phone) *with Johnson*, 2025 WL 3005047, at *3 (finding no due process claims relating to allegedly false RVRs stated "because plaintiff has not identified any procedural violations during the [RVR] hearing[.]").

However, although it appears that Plaintiff states a cognizable Fourteenth Amendment procedural due process claim against Defendant CO Gutierrez for filing false RVRs that resulted in constitutionally deficient disciplinary hearings and Plaintiff's loss of good time credits, the undersigned finds that the nature of Plaintiff's claim is not cognizable under § 1983. Notwithstanding Plaintiff's FAC seeks only monetary damages, the nature of his challenge would necessarily imply the invalidity of the deprivation of good time credits that resulted from the falsified RVRs. "The Supreme Court has spoken loud and clear that the only remedy in federal court for a prisoner seeking restoration of lost good-time credits is habeas corpus, not section 1983." *Johnson*, 2011 WL 1668978, at *5 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Heck v. Humphreys*, 512 U.S. 477, 487 (1994)). As Plaintiff was previously admonished in the first screening order, "Plaintiff's request for restoration of good-time credits appears foreclosed under *Heck*[], which bars a prisoner's civil rights claim that necessarily implies the invalidity of a conviction or sentence until he has succeeded in doing so by other means, such as through a successful petition for a writ of habeas corpus." (Doc. 6 at 13) (citing *Cole v. Spears*, No. CV 22-5925-MEMF (JPR), 2023 WL 5506003, at *3 (C.D. Cal. July 12, 2023) ("[A] prisoner's challenge to a disciplinary procedure is barred if judgment in his favor would necessarily imply the invalidity of the resulting loss of good-time credits."); *Heck*, 512 U.S. at 486-87).

*Edwards v. Balisok*, 520 U.S. 641 (1997) is instructive. In *Edwards*, a prisoner "was found guilty of violating four prison rules for which he was sentenced to spend 10 days in isolation, to spend 20 days in segregated housing, and to lose 30 days of earned time that would have shortened

his sentence." *See Hebrard v. Nofziger*, 90 F.4th 1000, 1008 (9th Cir. 2024). The prisoner "filed a § 1983 cause of action claiming that his prison disciplinary conviction violated his Fourteenth Amendment due process rights because he was 'denied the opportunity to put on a defense' or 'to present [ ] extant exculpatory evidence.'" *Id.* (citing *Edwards*, 520 U.S. at 643, 646-47). The *Edwards* Court held that *Heck* barred the claim because "'[t]he principal procedural defect complained of by [the prisoner] would,' if proven, demonstrate the unconstitutionality of the procedures used at his disciplinary hearing," such that the claim would "'necessarily imply the invalidity of the deprivation of his [earned]-time credits' in addition to the impropriety of his placement in isolated and segregated housing." *Id.* Therefore, the Supreme Court held that "after *Edwards*, *Heck* applies to a prisoner's due process challenge to his disciplinary conviction that claims the 'conviction was wrongful,' even if he 'does not seek damages directly attributable to [his] … confinement.'" *Id.*; *see Heck*, 512 U.S. at 486 n. 6.

"This is not a case like *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003), where the only consequence of invalidating the disciplinary conviction is the revocation or termination of housing placement, without affecting the length of incarceration." *Johnson*, 2011 WL 1668978, at *6. Instead, Plaintiff alleges that he was denied due process at his disciplinary hearings and, as a result, was deprived of good time credits. That type of due process claim may not be asserted under § 1983 because the relief sought "would necessarily imply the invalidity of the proceedings and forfeiture of time credits against him." *Gutierrez v. Pantoja*, No. 2:22-cv-1492-TLN-JDP (P), 2025 WL 660332, at *4 (E.D. Cal. Feb. 28, 2025) (recommending dismissal of a due process claim resulting in prisoner's loss of 90 days of good-time credit as barred by *Heck*) (citing cases), *F&R adopted by* 2025 WL 1531480 (May 29, 2025), *appeal filed*, No. 25-3740 (9th Cir. June 5, 2025).

Therefore, the undersigned finds that Plaintiff fails to state a procedural due process claim under the Fourteenth Amendment because his claim appears *Heck*-barred.

*b. Fourteenth Amendment Equal Protection*

i. Governing Authority

The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Center,* 473 U.S.

432, 440–441 (1985) (quoting U.S. Const. amend. XIV); *Hartmann v. California Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013) ("The Equal Protection Clause requires the State to treat all similarly situated people equally. This does not mean, however, that all prisoners must receive identical treatment and resources."). To state a claim, a plaintiff "must allege facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Hartmann*, 707 F.3d at 1123 (citation omitted); *see Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) (identifying "protected characteristics, such as race, alienage, national origin, or sex.") (citation omitted). Neither a prisoner's mental disability nor indigency are considered characteristics of a suspect class for equal protection purposes. *See Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996) ("For the purposes of equal protection analysis, the disabled do not constitute a suspect class."); *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999) ("[I]ndigent prisoners are not a suspect class.").

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Dep't of Ag.*, 553 U.S. 591, 601-02 (2008). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S.562, 564 (2000). Further, to establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976).

ii. Analysis

Plaintiff alleges that Defendant sought to remove Plaintiff from the EOP mental health program because of his race and mental health disability and conducted a targeted search to provoke Plaintiff into a mental health crisis and cause a confrontation which would result in his removal from the program. Plaintiff asserts the right not to be the target of disciplinary or criminal referrals to cover up Defendant's discrimination against him.

To the extent Plaintiff seeks to state an equal protection claim based on his mental health

disability, under the authorities identified above, disability, including mental health disability, is not a suspect class for purposes of equal protection under the Fourteenth Amendment. *Chandler*, 83 F.3d at 1155; *see Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1225 (9th Cir. 2008) ("[T]he disabled do not constitute a suspect class for equal protection purposes[.]") (quotation and citation omitted). Additionally, Plaintiff's conclusory allegations that he was targeted because of his race, which he does not identify in the FAC, fail to demonstrate or plausibly suggest that Defendant intentionally discriminated against him *because* of that protected status, and Plaintiff does not show whether he was ultimately removed from the EOP program. *James Cook, Jr. v. Secretary of CDCR, et al.*, No. 1:26-cv-05755-SAB (PC), 2026 WL 2868557, at *3 (E.D. Cal. July 29, 2026) ("[E]ven though Plaintiff is … a prisoner, and a participant in the CDCR's mental health services, he includes no factual allegations in his [FAC] to plausibly suggest [] Defendant intentionally discriminated against him *because of* a protected status.").

Moreover, Plaintiff fails to provide any allegation demonstrating that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist*, 553 U.S. at 601-02. In short, Plaintiff's equal protection claim is wholly conclusory. *See Wriden v. Arias*, No. 3:24-cv-1240 JLS (LR), 2026 WL 310186, at *8 (S.D. Cal. Feb. 5, 2026) ("while Wriden also references equal protection, he … alleges no facts to support such a claim, and therefore, it is dismissed as conclusory and speculative."). Therefore, Plaintiff fails to state a cognizable equal protection claim.

## III. PLAINTIFF FAILED TO COMPLY WITH THE COURT'S ORDER

Apart from Plaintiff's failure to state a claim upon which relief may be granted, Plaintiff has failed to comply with this Court's order to file in response to the Court's second screening order either a second amended complaint or a notice of voluntary dismissal and, as such, has failed to prosecute this action. Accordingly, the undersigned will recommend Plaintiff's FAC be dismissed on this separate, independent ground.

### A. Governing Authority

Local Rule 110, corresponding with Federal Rule of Civil Procedure 11, provides that "[f]ailure of counsel or of a party to comply with these Rules or with any order of the Court may

be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." Local Rule 110. The Court has the inherent power to control its docket and may, in the exercise of that power, impose sanctions where appropriate, including dismissal of the action. *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000). A court may dismiss an action based on a party's failure to prosecute an action, obey a court order, or comply with local rules. *See, e.g., Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with a court order to amend a complaint); *Malone v. U.S. Postal Service*, 833 F.2d 128, 130-31 (9th Cir. 1987) (dismissal for failure to comply with a court order); *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules).

"In determining whether to dismiss an action for lack of prosecution, the district court is required to weigh several factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Carey v. King*, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (internal quotation marks & citation omitted). These factors guide a court in deciding what to do and are not conditions that must be met in order for a court to take action. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

**B. Analysis**

Here, Plaintiff has failed to comply with the Court's order. Plaintiff has filed no response to the Court's second screening order granting him leave to amend his FAC and the time to do so has passed. There are no other reasonable alternatives available to address Plaintiff's failure to respond and otherwise obey this Court's orders. Thus, the first and second factors—the expeditious resolution of litigation and the Court's need to manage its docket—weigh in favor of dismissal. *Carey*, 856 F.2d at 1440.

The third factor, risk of prejudice to Defendant, also weighs fairly in favor of dismissal since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *See Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). This matter cannot proceed

further without Plaintiff's participation to prosecute the case and file a second amended complaint curing the deficiencies identified in the second screening order or file a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) if he no longer wishes to pursue this action. The presumption of injury holds given Plaintiff's unreasonable delay in prosecuting this action. Thus, the third factor—a risk of prejudice to the Defendant—also weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re PPA*, 460 F.3d at 1228. Plaintiff has not moved this case forward toward disposition on the merits. Instead, he has failed to comply with this Court's order and, thus, is impeding the progress of this action. Therefore, the fourth factor—the public policy favoring disposition of cases on their merits—also weighs in favor of dismissal. *Carey*, 856 F.2d at 1440.

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262. Here, the Court's second screening order granting Plaintiff leave to amend and requiring a response from Plaintiff cautioned: "**Any failure by Plaintiff to timely comply with this order will result in a recommendation that this action be dismissed, without prejudice, for failure to obey a court order and for failure to prosecute**." (Doc. 14 at 13-14) (emphasis original). Plaintiff was adequately forewarned that the failure to timely file a second amended complaint would result in terminating sanctions.

## IV. Conclusion and Recommendation

Accordingly, it is RECOMMENDED that:

1. The Court DISMISS this action for Plaintiff's failure to state a claim upon which relief may be granted, and separately, for his failure prosecute this action and to comply with the Court's orders. *See* Local Rule 110.
2. The Clerk of the Court be DIRECTED to close this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections, but a party may refer to exhibits in the record by CM/ECF document and page number. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **November 23, 2026**

UNITED STATES MAGISTRATE JUDGE